**In re Annie Smith BAGBY.**

**In re James L. HUGHES, Jr., Debtor.**

**Bankruptcy Nos. 96–32524–L, 97–23447–L.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

March 26, 1998.

Sidney Feuerstein, Memphis, TN, for Annie Smith Bagby.

William M. Gotten, Memphis, TN, for EZ Cash 1, L.L.C.

Thomas Fila, Memphis, TN, for James L. Hughes, Jr.

F. Michael Bursi, Memphis, TN, for Cash in a Flash.

George W. Stevenson, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION

JENNIE D. LATTA, Bankruptcy Judge.

In each of these cases, the Debtor used a deferred presentment service provider[1] to obtain a cash advance in exchange for a personal check *after* filing a Chapter 13 bankruptcy petition. In each of these cases, the Debtor and Creditor submitted for entry a proposed consent order creating a special class for treatment of the claim of the deferred presentment service provider. The Court was unable to determine from the information provided in the proposed consent orders whether approval of the proposed set-

tlement was appropriate and thus set the matters for hearing. Because these cases raise common issues of law, joint hearings were held on these matters on January 21, 29, and February 13, 1998.

## *FACTS*

### A. Annie Smith Bagby

Annie Smith Bagby filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 27, 1996. Her Chapter 13 plan was confirmed by order entered December 20, 1996. Among the provisions of her plan, Ms. Bagby agreed to pay $128.00 semi-monthly by payroll deduction. Two secured claims and two priority claims were provided for. The Debtor originally listed eleven unsecured creditors holding claims in the aggregate amount of approximately $3,400.00. The percentage to be paid to these unsecured creditors was to be determined by the Chapter 13 Trustee upon the expiration of the bar date for filing proofs of claim. The percentage was later set at 50%. As the result of an addition of an inadvertently omitted pre-petition creditor, the Debtor's plan payments were subsequently increased to $146.00 semi-monthly.

On September 29, 1997, the Debtor's attorney filed a "Motion to Add Post–Petition Creditors," alleging that the Debtor had become indebted to Cash Advance, Quick Cash, EZ Cash, Cash It Plus, and Cash Incorporate and desired to add these claimants[2] to her plan to receive 100% of their claim amounts. Notice of the Debtor's motion was mailed to the claimants to be added and all pre-petition creditors. No objections were filed and the Court entered an "Order and Notice of Debtor's Amendment to Add Post–Petition Creditors to Chapter 13 Plan and of Creditor's Options to File a Proof of Claim and to Receive Payments Under the Plan," with respect to Cash Advance, Quick Cash,

---

**1.** "Deferred presentment services" means a transaction pursuant to a written agreement involving the following combination of activities in exchange for a fee:
 (A) Accepting a check dated on the date it was written; and
 (B) Holding a check for a period of time prior to presentment for payment or deposit
Tenn.Code Ann. § 45–17–102(4).

**2.** Strictly speaking, an entity holding a claim against a bankruptcy debtor that arose after the filing of the petition is not a creditor, which is defined in pertinent part as "an entity that has a claim against the debtor that arose at the time or before the order for relief concerning the debtor." 11 U.S.C. § 101(10).

Cash It Plus and Cash Incorporate. EZ Cash was not included in that order. The order specifically provided that disbursements to allowed pre-petition creditors would not be reduced in the absence of notice to all pre-petition creditors and of their opportunity to object to the reduction of their disbursements.

With respect to the claim of EZ Cash, counsel for the Debtor and Claimant submitted a proposed "Agreed Order on Motion of Debtor to Add Post–Petition Creditor to Plan." That order proposed that the claim of EZ Cash 1, LLC would be added to the plan as a Class I unsecured claim in the amount of $298.00, which included an attorney fee of $50.00, to be paid at the rate of $10.00 per month through the plan with interest at 10% per annum until completion of payment.

At the hearings, the Court heard the testimony of Ms. Bagby, the Debtor; Charlotte Cross, a manager for EZ Cash; Harold Sanders, who actually interviewed Ms. Bagby at her initial visit to EZ Cash; and Melinda Thompson, part owner of EZ Cash. The Debtor was represented by Sidney Feuerstein, attorney. EZ Cash was represented by William M. Gotten, attorney. Mr. George W. Stevenson, one of the Standing Chapter 13 trustees for this district, also appeared and gave a statement to the Court.

Ms. Bagby testified that she has been employed by the State of Tennessee, Department of Corrections, for fourteen years. She explained that she originally entered into a transaction with EZ Cash because she needed money for rent or utilities. In the first transaction, which occurred June 19, 1997, Ms. Bagby completed a Customer Data Sheet and supplied a copy of her driver's license, recent check stub, recent utility or telephone bill, and most recent bank statement. There was a dispute in the testimony of Ms. Bagby and the representatives of EZ Cash as to whether Ms. Bagby was questioned about whether she was "under a wage earner," i.e., whether she was a debtor in a Chapter 13 case. Ms. Bagby insisted that the question was never asked, while Mr. Sanders, who interviewed Ms. Bagby, insisted that his normal procedure was to inquire about Chapter 13.

Ms. Bagby was approved as a customer. She apparently signed a document titled "EZ Cash Payroll Advance Customer Agreement Contract" (although the only agreement produced by EZ Cash was dated August 29, 1997, well after this initial transaction), wrote a check for $124.00 payable to EZ Cash dated June 19, 1997, and received a check from EZ Cash in the amount of $100.00. Ms. Bagby understood that EZ Cash would hold her check for fourteen days. In this first instance, Ms. Bagby redeemed her check by paying cash in the amount of $120.00 on June 27, 1997. She received a four dollar "discount" for early payment.

Ms. Bagby's next transaction with EZ Cash occurred on July 2, 1997. Because her first transaction had been handled satisfactorily, she was considered a "good customer" according to Mr. Sanders, and most of the background questions asked on her first visit were omitted. This time, Ms. Bagby wrote a check for $248.00 and received an advance from EZ Cash in the amount of $200.00. Her contract was "due" on July 16, 1997. This time, however, Ms. Bagby was not able to pay the entire $248.00 she owed, so she was permitted an "extension" upon payment of the $48.00 fee only. This process apparently occurred four times, with Ms. Bagby not receiving additional funds, but paying a $48.00 fee every two weeks to extend her contract. On at least one of these occasions, Ms. Bagby was asked to replace her original check. The check which is the subject of the EZ Cash claim is dated August 1, 1997.

Ms. Bagby testified that she eventually realized that she was "hooked," with $48.00 coming out of her "bill money" every two weeks. She stated that she decided to put EZ Cash in the plan because she wanted EZ Cash to be paid. Ms. Bagby stated that she did not consider the service provided by EZ Cash to be a loan and thus did not seek Mr. Feuerstein's advice about whether it was necessary to obtain the Chapter 13 Trustee's approval before entering into these transactions. She stated that she thought the $48.00 fee was kind of steep but that she was willing to pay it because she needed the money.

## B. James L. Hughes, Jr.

Mr. Hughes's story is similar to Ms. Bagby's. Mr. Hughes filed a voluntary Chapter 13 petition on March 10, 1997. Mr. Hughes listed one priority creditor and five unsecured creditors owed in the aggregate $4,330.00. Mr. Hughes proposed to pay $30.00 semi-monthly to fund his plan. The plan was confirmed by order entered May 6, 1997. The percentage to be paid to these unsecured creditors was to be determined by the Chapter 13 Trustee upon the expiration of the bar date for filing proofs of claim. It does not appear from the Court's file what percentage has been set, if any.

Cash in a Flash, a deferred presentment service provider, filed an objection to confirmation of Mr. Hughes's Chapter 13 plan on September 16, 1997, some four months after confirmation. On or about October 21, 1997, counsel for the Debtor and Cash in a Flash submitted a proposed "Consent Order Withdrawing Objection to Confirmation of Cash in a Flash," which included a paragraph purporting to modify the Debtor's Chapter 13 plan "to add Cash in a Flash as a post-petition, Class I, unsecured creditor, in the amount of $238.00, to be paid at the rate of $10.00 per month, with the balance of the claim, if any, to be paid as a general unsecured creditor—based on the Debtor's issuance of a worthless checks [sic] to said creditor, post-petition." The proposed order further provided that "the Chapter 13 Trustee be authorized and directed to increase the Debtor's plan payments, as necessary, to accommodate the payment of this additional claim herein."

At the hearing on February 13, 1998, the Debtor was represented by Thomas Fila, attorney, and Cash in a Flash was represented by F. Michael Bursi, attorney. The Court heard testimony from Mr. Hughes, the Debtor; Dwight Blake, one of the owners of Cash in a Flash; Elaine Blake, another owner of Cash in a Flash; and Joey Forte, an employee of Cash in a Flash.

The Debtor testified that he first visited Cash in a Flash on April 19, 1997. He provided information to a lady, who never asked about a bankruptcy filing by Mr. Hughes. Mr. Hughes said that he presented a paycheck stub to this lady, who asked about a deduction for a lien that appeared thereon. Mr. Hughes admitted that he was evasive about this notation, which was actually the deduction for his Chapter 13 plan payment. Mr. Hughes emphatically stated that if he had been asked whether he had filed a "wage earner," he would have answered truthfully, but Mr. Hughes also admitted that he was "desperate" for funds because he was behind on his rent. Mr. Hughes said that he understood that Cash in a Flash would loan him money and that he would pay it back in fourteen days.

Ms. Elaine Blake testified concerning the normal business practices of Cash in a Flash. Ms. Blake testified that a potential customer is required to present two pieces of identification with a photograph, a recent utility or telephone bill, the most recent bank statement, and a recent paycheck stub. Cash in a Flash employees are required to look at the identification, bank statement and paycheck stub; check the customer's name in a computer to determine whether the customer has ever been turned down by that location or any other Cash in a Flash location; call "Tele–Track" to determine whether other companies have reported problems about the customer; verify whether the customer's bank account is active; verify employment; call to determine whether the customer has a pending bankruptcy case; take a picture of the customer; and check to be sure that the customer's check is written for the correct amount.

Mr. Dwight Blake testified that if the potential customer is a debtor in bankruptcy, the transaction is turned down. Mr. Blake further testified, however, that the extensive background check is not performed each time a customer does business with Cash in a Flash, but only the first time, and thereafter, only if the customer has not had contact with Cash in a Flash for more than thirty days.

Mr. Blake explained that Cash in a Flash is a deferred presentment service provider. It charges a fee for cashing a check. Cash in a Flash agrees not to deposit the check until fourteen days after it is presented. The customer must redeem the check in cash for

the full amount owed or the check is deposited. Occasionally, Cash in a Flash permits partial payments, but Cash in a Flash does not permit "rollovers," i.e., the customer cannot simply pay a fee to obtain an additional fourteen-day holding period. Further, the customer cannot receive an additional advance from Cash in a Flash until his outstanding contract is paid in full.

Mr. Blake further testified that Mr. Hughes's first visit to Cash in a Flash occurred on a Saturday, and thus Cash in a Flash was unable to verify whether Mr. Hughes had filed a bankruptcy case. Mr. Hughes used the services of Cash in a Flash four times before submitting the check which is the basis of its present claim. The subject check is dated June 13, 1997, and is made payable to Cash in a Flash in the amount of $238.00. Mr. Blake testified that Mr. Hughes received cash in the amount of $200.00 in exchange for this check. When Mr. Hughes failed to timely redeem this check, Cash in a Flash deposited the check. The check was returned, however, because Mr. Hughes's bank account had been closed. Mr. Blake admitted that his employees do not attempt to determine whether their customer has filed a bankruptcy petition each time the customer comes in. The application submitted by Mr. Hughes on April 19, 1997, contains no question concerning whether a bankruptcy case has been filed by the customer.

Mr. Forte testified that he took Mr. Hughes's application the first time he came to Cash in a Flash and that he was certain that he asked Mr. Hughes whether a bankruptcy case had been filed. Mr. Forte also stated that Mr. Hughes told him that the deduction that appeared on his paycheck stub was related to a child support obligation. Mr. Forte stated that the decision to extend an advance to Mr. Hughes was made by Mr. Blake. On cross examination, Mr. Forte testified that he normally verifies whether a bankruptcy case has been filed by calling 576–1305 (which the Court notes is a number used by the Chapter 13 trustees in this district).

## CONCLUSIONS OF LAW

### A. Modification of a Confirmed Plan

Modification of a Chapter 13 plan after confirmation is governed by 11 U.S.C. § 1329(a). That section provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a). Each of the three subsections of section 1329(a) relates to modification of claims *provided for* under the plan. Neither of the confirmed plans in these cases provided for the treatment of post-petition claims. In his treatise, Judge Lundin questions whether section 1329(a) is available for post-confirmation modification of a plan to include post-petition claims if such claims were not provided for by the original plan, and strongly recommends that every Chapter 13 plan contain a provision for the payment of post-petition claims. *See* 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.51, p. 6–157 (2d ed.1994). Nevertheless, some bankruptcy judges appear to permit post-confirmation modification of Chapter 13 plans to provide for treatment of post-petition claims under certain conditions. *See, e.g., In re Trentham,* 145 B.R. 564 (Bankr. E.D.Tenn.1992); *In re Goodman,* 136 B.R. 167 (Bankr.W.D.Tenn.1992); *In re Thornton,* 21 B.R. 462 (Bankr.W.D.Va.1982).

According to the Bankruptcy Code, the plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved. 11 U.S.C. § 1329(b)(2). Federal Rule of Bankruptcy Procedure 3015(g) governs modification of a plan after confirmation. It provides:

(g) Modification of Plan After Confirmation. A request to modify a plan pursuant to § 1229 or 1329 of the Code shall identify the proponent and shall be filed together with the proposed modification. The clerk, or some other person as the court may direct, shall give the debtor, the trustee, and all creditors not less than 20 days notice by mail of the time fixed for filing objections and, if an objection is filed, the hearing to consider the proposed modification, unless the court orders otherwise with respect to creditors who are not affected by the proposed modification. A copy of the notice shall be transmitted to the United States trustee. A copy of the proposed modification, or a summary thereof, shall be included with the notice. If required by the court, the proponent shall furnish a sufficient number of copies of the proposed modification, or a summary thereof, to enable the clerk to include a copy with each notice. Any objection to the proposed modification shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and shall be transmitted to the United States trustee. An objection to a proposed modification is governed by Rule 9014.

FED.R.BANKR.P. 3015(g).

 Neither in Ms. Bagby's case nor in Mr. Hughes' case did the Debtor satisfy the requirements of Rule 3015(g). In Ms. Bagby's case, notice of the Debtor's "Motion to Add Post–Petition Creditors" was mailed to all creditors as well as the claimants to be added. The motion and notice of hearing were mailed to creditors and parties in interest on October 9, 1997. The notice did not specify a time fixed for filing objections as required by Rule 3015(g), but it did indicate that a hearing to consider the motion would be held on October 28, 1997. Pursuant to the Local Bankruptcy Rules and Forms of the United States Bankruptcy Court, Western District of Tennessee, in Chapter 13 cases "[a]s the Court docket is called by a Courtroom Deputy Clerk in conjunction with the chapter 13 trustee on the date and time set by the Notice of Hearing, if no party appears to resist the relief sought, it may be granted without hearing." L.B.R. 9013–1(c)(2). Under Local Bankruptcy Rule 9013–

1(c)(3), if a party appears and objects to the relief sought, the matter is set for hearing on a subsequent date. L.B.R. 9013–1(c)(3). It is generally understood among regular practitioners in the Bankruptcy Court for the Western District of Tennessee that the filing of a written objection in Chapter 13 cases prior to the scheduled hearing is permitted but not required. Those creditors who are not represented by counsel who regularly practice in this Bankruptcy Court, however, may not be aware of this local practice, and thus may not be aware of the option to either file a written objection prior to the first scheduled hearing or to appear at the scheduled hearing to raise an objection. The notice was mailed in this case 19 days prior to the first scheduled hearing and did not provide notice of the time fixed for filing written objections.

Further, although a copy of Ms. Bagby's motion was mailed to all creditors, the motion did not adequately summarize the proposed modification to the plan. The motion states in pertinent part:

1. That Cash Advance, Quick Cash, EZ Cash, Cash it Plus and Cash Incorporate be allowed to file a proof of claim to be included in the debtor's Chapter 13 case as post petition creditors to receive 100% of their claim amounts.

2. That the debtor's Chapter 13 plan payments be adjusted as necessary to comply with the modification prayed for herein.

The motion does not specify how the added claims are to be classified in the modified plan, how the payment of 100% of these Creditors' claims will affect the payment of pre-petition unsecured claims, and what adjustments will be "necessary to comply with the modification prayed for herein." Based upon statements made by counsel and the Trustee, the Court believes that post-petition claims are often, if not always, separately classified and receive payments *before* the claims of general unsecured pre-petition creditors. The Court further understands that the percentage distribution to general unsecured pre-petition creditors is not diluted because the debtor's plan payment is ad-

justed upward to accommodate the added claims. Setting aside for the moment the propriety of this treatment, it is clear that the motion and notice provided to creditors in Ms. Bagby's case did not adequately inform general unsecured pre-petition creditors of the potential effects of the proposed modification.

With respect to the specific post-petition claim that is before the Court, that of EZ Cash, the notice given was further insufficient in that the proposed agreed order sought additional modification of the plan without providing additional notice to the creditors and opportunity to object. The proposed order provided for the payment of interest on the claim of EZ Cash and the addition of a $50.00 attorney fee. The modification of a confirmed Chapter 13 plan is not a matter for private negotiation between the debtor, the trustee, and a particular creditor. All creditors are entitled to notice and an opportunity to object to a proposed modification, unless the court orders otherwise with respect to creditors who are not affected by the proposed modification. FED.R.BANKR.P. 3015(g). Proposed dilution or delay in payment of the claims of unsecured pre-petition creditors requires notice to all such creditors calculated to specifically inform them of the effects of the proposed modification on their claims and the procedure for filing a written objection.

Turning to Mr. Hughes' case, the facts are perhaps more egregious. The pre-petition creditors in Mr. Hughes' case received *no* notice of the proposed modification contained in the consent order submitted to the Court for entry. Cash in a Flash initially filed an untimely objection to confirmation of the Debtor's plan some four months *after* the plan had been confirmed. The objection contained no information concerning the claim of Cash in a Flash and was served only upon the Debtor, the Trustee, and the Debtor's attorney.

The proposed consent order sought to modify the Debtor's confirmed plan "to add Cash in a Flash as a post-petition, Class 1, unsecured creditor in the amount of $238.00, to be paid at the rate of $10.00 per month, with the balance of the claim, if any, to be paid as a general, unsecured creditor—based on the debtor's issuance of a worthless checks [sic] to said creditor, post-petition." As noted, pursuant to local practices and customs, all Class 1 unsecured claims are paid in full before the general unsecured pre-petition creditors receive any distribution. The Trustee admitted that a substantial portion of Chapter 13 cases in this district fail within the first 18 months. Thus the effect of placing post-petition claims in Class 1 unsecured, even in a case where the proposed distribution to general unsecured pre-petition creditors is 100%, is to increase the possibility that general unsecured creditors will receive no distribution under the plan. No notice of the delay in distribution to general unsecured creditors was given in Mr. Hughes' case.

The Court concludes that in both of these cases the Debtors' proposed plan modifications cannot be approved because the Debtors failed to comply with the notice requirements of Rule 3015(g).

## B. Allowance of Post–Petition Claims

Both EZ Cash and Cash in a Flash have filed proofs of claim: EZ Cash filed a proof of claim in the *Bagby* case in the amount of $298.00 and Cash in a Flash filed a proof of claim in the *Hughes* case in the amount of $817.33. The filing and allowance of post-petition claims is governed by 11 U.S.C. § 1305. That section provides:

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is for a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

11 U.S.C. § 1305(a). Subsection (a)(2) is further limited, however, by subsection (c) which provides:

A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval of the trustee of the

debtor's incurring the debt was practicable and was not obtained.

11 U.S.C. § 1305(c). Only the holder of a post-petition claim may file a proof of claim under section 1305. A debtor may not file a proof of claim for the holder of a post-petition claim and force its participation in a plan. *See In re Goodman,* 136 B.R. 167, 169 (Bankr.W.D.Tenn.1992); *In re Trentham,* 145 B.R. 564, 567 (Bankr.E.D.Tenn.1992); *In re Farquhar,* 112 B.R. 34 (Bankr.D.Colo. 1989).

■ Unlike pre-petition claims filed under section 501, claims filed under section 1305 are not deemed allowed. *See* 11 U.S.C. § 502(a). Whether the claims filed by EZ Cash and Cash in a Flash should be allowed depends initially upon whether the claims are of the types of post-petition claims that may be allowed. Only tax claims or claims for consumer debts for property or services necessary for the debtor's performance under the plan may be allowed, and even these claims will be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable was not obtained.

■ The requirement for obtaining prior approval for post-confirmation credit is very important. It protects debtors from entering into ill-advised credit arrangements, such as those at issue. With the help of the trustee, it is hoped that debtors will be able to break the "cycles of poor financial judgment" that may have led to the filing of their petitions in the first place. *See In re Brown,* 170 B.R. 362, 366 (Bankr.S.D.Ohio 1994). Further, requiring the approval of the trustee insures that a determination is made that incurring additional debt is actually necessary to the debtor's performance under the plan. This protects not only the debtor, but all creditors whose claims are provided for in the confirmed plan.

■ As noted by Judge William Houston Brown, too often in this district the Court is faced with Chapter 13 consumer debtors who incur post-petition debt, both secured and unsecured, without prior approval of the trustee or the Court. *In re Good-*

*man,* at 167, 170. Too often, the debtor and creditor attempt to solve this problem by submitting proposed "consent orders." The factual inquiry required by section 1305(c) cannot be resolved by consent order, because there are other parties, specifically the creditors provided for by the plan, whose interests may be affected by the determination. When a post-petition claimant files a proof of claim for a consumer debt, the trustee must determine whether prior approval of the debtor's incurring the debt was obtained. If it was, the trustee should make a written recommendation to the court that the claim be allowed. The trustee's recommendation for allowance of the claim will be understood by the court as the trustee's representation that in the trustee's opinion, the incurring of the debt was necessary for the debtor's performance under the plan and that the trustee approved the debtor's incurring the debt before it was incurred.

■ When proofs of claim are filed for post-petition consumer debts the trustee did not previously approve, the claims will not be allowed until the Court conducts a hearing. Either the claimants, the trustee, or the debtor may request a hearing to consider whether the claims should be allowed. The hearing may be combined with a hearing to determine whether any proposed modification to provide for the treatment of the post-petition claim should be approved. At the hearing, the Court will require the debtor and creditor to demonstrate that the debt is one for property or services necessary for the debtor's performance under the plan *and* that obtaining the prior approval of the trustee was not practicable. This Court will not assume that obtaining the prior approval of the trustee was not practicable. *But see In re Farquhar,* 112 B.R. 34 36 (Bankr.D.Colo. 1989).

In these cases, neither the Claimants nor the Debtors sought the approval of the Chapter 13 Trustee before these debts were incurred. To solve this difficulty, the Claimants argue either (1) that deferred present-ment services are not loans and thus did not create consumer debts, so that no approval was required; or (2) that the Claimants neither knew nor should have known of the

888

pending bankruptcy cases at the time these transactions occurred and thus obtaining the approval of the Trustee was not practicable.

With respect to the first argument, the Court reiterates that only two types of post-petition claims may be allowed: certain tax claims and claims for certain consumer debts. The claims of EZ Cash and Cash in a Flash are not tax claims, thus unless they are consumer debts, they cannot be allowed at all. "Consumer debt" is a "debt incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. § 101(8). A "debt" is a "liability on a claim." 11 U.S.C. § 101(12). "Claim" means "right to payment, whether or not such claim is reduced to judgment, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). EZ Cash and Cash in a Flash assert rights to payment. Both the Debtors are individuals. Ms. Bagby testified that she needed her advance for rent or utilities. Mr. Hughes testified that he needed money because he was late on his rent. Both of these claims are for post-petition consumer debts.

Not all post-petition consumer debts may be allowed, however. Only those debts for property or services necessary for the debtor's performance under the plan may be allowed. The legislative history for section 1305(b) indicates that the types of claims Congress had in mind were claims for expenses such as medical bills or automobile repairs. See 8 COLLIER ON BANKRUPTCY ¶ 1305.02[2] (15th ed. revised 1997). Witnesses for EZ Cash and Cash in a Flash testified that they did not inquire into the Debtors' purpose in obtaining deferred presentment services. As stated, the Debtors testified that the advances were required for rent or utilities. The Court is prepared to find that these debts were for property or services necessary for the Debtors' performance under the plans in these cases, but strongly suggests that in future cases, a better record be created indicating this necessity.

Having concluded that both of these debts are consumer debts that may be allowed under section 1305(a)(2), the Court will con-sider the Claimants' second argument that the claims should not be disallowed under section 1305(c) because obtaining the prior approval of the Trustee was not practicable in that the Claimants neither knew nor should have known of the pendency of the Debtors' bankruptcy cases. Essentially, the Claimants argue that they relied upon the Debtors to provide information about their pending bankruptcy cases. Because the Debtors did not provide them with this information, the Claimants argue they neither knew nor should have known about them.

■ The filing of a bankruptcy petition is a matter of public record. Access to such records is readily available through the Bankruptcy Court Clerk. Access may be had through telephone by calling the office of the Clerk during business hours or through VCIS ("Voice Case Information System"). Access may be had by computer modem through the PACER ("Public Access to Court Electronic Records") system. Both the VCIS and PACER systems are generally available 24 hours each day. Both of these Debtors are residents of the Western District of Tennessee and their cases were pending in the Western District of Tennessee. Had the Debtors' cases been pending in another district, the Court's conclusion might be different. In these cases, however, the Claimants should have known of the pendency of these cases, and thus their argument fails.

■ Even though the Claimants should have known about the pendency of these bankruptcy cases, the inquiry under section 1305(c) is more narrow, however. The Court must determine whether the Claimants knew or should have known that obtaining the prior approval of the Trustee was practicable and was not obtained. The Court was presented with little evidence concerning whether the Chapter 13 Trustee's approval could have been obtained prior to the Debtors' incurring these debts. What Ms. Bagby did say, however, is important. Ms. Bagby testified that she did not believe that the transaction she was entering into was a loan and thus did not believe that the approval of the Trustee was required. Given the position taken by the Claimants in these cases (that

their services are not loans) and the lack of any meaningful disclosure to the Debtors about the nature of the transactions they were entering into, the Court concludes that it was not practicable for the Debtors to obtain the prior approval of the Trustee before incurring these debts. For future cases, however, the Court strongly encourages debtor's counsel and the Chapter 13 trustees to caution debtors about these types of transactions.

██ The Court next considers the amounts of the proofs of claim filed in these cases. EZ Cash filed a proof of claim in the Bagby case in the amount of $298.00, consisting of the face amount of the outstanding check, $248.00, and an attorney's fee in the amount of $50.00. Attached to the proof of claim is a copy of the "Payroll Advance Customer Agreement Contract" and a copy of Ms. Bagby's check. The contract does not authorize the collection of an attorney's fee, and the proof of claim contains no other basis for the charging of an attorney's fee. Thus, the Court concludes that the claim should be allowed only in the amount of $248.00.

Cash in a Flash filed a proof of claim in the Hughes case in the amount of $817.33. There are no attachments to the proof of claim and no explanation for how this figure was derived. According to the testimony of Mr. Hughes and Ms. Blake, the debt to Cash in a Flash is based upon a check in the amount of $238.00 which was returned after deposit because Mr. Hughes' account was closed. The court record contains no basis to allow this claim in any amount in excess of $238.00, but the Court will permit Cash in a Flash to file an amended proof of claim, with appropriate documentation, if Cash in a Flash believes it is owed an additional amount.

### C. Separate Classification and Treatment of Post–Petition Claims

As noted, a post-petition claimant cannot be forced to participate in a Chapter 13 plan. In these cases, the post-petition Claimants voluntarily filed proofs of claim in connection with proposed agreed treatment of their claims. The Debtors proposed to modify their plans to separately classify the post-petition claims as "Class I unsecured." As noted earlier, in this district, that classification results in post-petition claimants being paid in full before pre-petition unsecured claimants are paid. The Court assumes that in cases in which distributions to unsecured creditors have commenced, the addition of a post-petition claim results in an interruption of those distributions. As Judge William Houston Brown has previously ruled, the addition of post-petition creditors will not be approved if the result will have an adverse effect upon existing creditors, without appropriate notice. *In re Goodman,* 136 B.R. at 170. The Court has already ruled that in these cases, notice to the pre-petition unsecured creditors was not appropriate, thus it is not strictly necessary for the Court to determine whether the proposed treatment of the post-petition claims in these cases may be approved. As a guide for future cases, however, it should be noted that even if there are no objections filed to a proposed plan modification, the Court still may not approve a proposed modification unless the plan as modified complies with the requirements of sections 1322(a), 1322(b), 1323(c), and 1325(a). *See* 11 U.S.C. § 1329(b)(1).

██ Section 1322(b)(1) permits a plan to designate a class or classes of unsecured claims, as provided in section 1122, but the plan may not discriminate unfairly against any claim so designated. In general, four factors must be considered in determining whether a proposed classification scheme is proper:

1. Whether the discrimination has a reasonable basis;

2. Whether the debtor can carry out the plan without such discrimination;

3. Whether the classification has been proposed in good faith; and

4. The nature of the treatment of the class discriminated against.

*In re Riggel,* 142 B.R. 199, 202 (Bankr. S.D.Ohio 1992) (citing *In re Hosler,* 12 B.R. 395, 396 (Bankr.S.D.Ohio 1981)).

██ Because a post-petition claimant always has the option of not filing a proof of claim and not participating in a Chapter 13

plan, the debtor who hopes to discharge a post-petition claim will want to provide for full repayment of post-petition claims. *See* 11 U.S.C. § 1328(d). As indicated earlier, this is best done in the original plan, and not pursuant to subsequent modification. Nevertheless, because only those claims for consumer debts for products or services that are necessary to the debtor's performance under the plan may be allowed, a reasonable basis exists for the separate classification and treatment of post-petition claims. It is appropriate to provide for payment in full of allowed post-petition claims because by definition these debts were incurred to enable the debtor to perform under the plan. If these debts had not been incurred, in theory at least, the pre-petition creditors would not be paid because the debtor would be unable to perform under the plan.

Thus the Court is persuaded that the first factor is met: discrimination between pre-petition unsecured claims and post-petition unsecured claims has a reasonable basis. With respect to the second factor, that is whether payment of post-petition claims before general unsecured creditors is necessary for the Debtor to carry out the plan, the Court sees no reason why post-petition claims cannot be paid simultaneously with general unsecured claims, but is willing to be convinced otherwise upon a proper showing. The Court makes no determination in these cases concerning the third and fourth factors. The Court will enter an order declining to approve the proposed modifications in these cases, without prejudice to the Debtors filing amended motions that comply with the requirements of section 1329 and Rule 3015(g).

### CONCLUSION

Based upon the foregoing, the Court declines to approve the proposed modifications to the Debtors' plans in these cases due to the lack of proper notice. The Court is aware that both Claimants filed proofs of claim in anticipation of the agreed upon modifications. No post-petition claimant can be forced to participate in a plan. *In re Goodman*, 136 B.R. at 171. Thus the Court will permit the Claimants to withdraw their proofs of claim, if desired. The Court has

indicated the amount of the claims that will be allowed if the proofs of claim are not withdrawn. The Debtors or the Trustee may file motions to modify the plans consistent with the notice requirements of the Bankruptcy Code and Rules to provide for treatment of allowed post-petition claims. 11 U.S.C. § 1329(a); FED.R.BANKR.P. 3015(g). In that event, the Court will conduct a hearing to determine whether the proposed modifications should be approved. 11 U.S.C. § 1329(b)(2).

Separate orders will be entered in each case consistent with this memorandum.