In re Tony W. PERKINS and
Jacqueline A. Perkins,
Debtors.

No. 99–42630–JSS–13.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Jan. 23, 2004.

John M. Caraway, Jr., Talladega, AL, for Debtors Tony & Jacqueline Perkins.

Linda B. Gore, Gadsden, AL, Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

The above-captioned title 11 case came before this Court on October 29, 2003 for a hearing on Debtors' Motion to Modify the confirmed Chapter 13 plan. (Doc. No. 64). In the motion to modify, the Debtors seek to reduce the percent paid to all post-petition unsecured claims to 0%. Debtors' counsel and the Chapter 13 Trustee appeared before the Court and presented argument on the issue. This Court took the matter under advisement, and this Memorandum Opinion constitutes the Court's findings and conclusions.

## JURISDICTION AND VENUE

This Court has original and exclusive jurisdiction to hear and determine all cases under title 11 in accordance with 28 U.S.C. §§ 157(a) and 1334 and the Standing Order of Reference in the Northern District of Alabama. (Ord.Ref.(N.D.Ala. July 17, 1984)). The motion before the Court is a core proceeding in which the Court may enter appropriate orders and judgments pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Venue in this matter is proper and has not been challenged. *See* 28 U.S.C. § 1409(a). This matter is properly before this Court.

## FACTS

Debtors, Tony and Jacqueline Perkins, filed for relief under Chapter 13 of the Bankruptcy Code on September 8, 1999. Along with their petition, the Debtors filed a proposed Chapter 13 Plan. Under the proposed plan, the Debtors provided for post-petition claims in Class 9, stating "Post–Petition claims allowed under 11 U.S.C. section 1350 shall be paid in full in equal monthly installments, which installments commence on the date of the allowance of said claim and conclude on the last payment under the plan."

On March 7, 2000, the Debtors filed an Amended Chapter 13 Plan which stated it was an amended plan "replacing" all prior plans. (Doc. No. 18). The Amended Chapter 13 Plan deleted Class 9, and made no reference to the payment of post-petition claims. The plan filed March 7, 2000 was confirmed as the Debtors' plan by order entered on March 14, 2000. (Doc. No. 21). Under the Debtors' confirmed plan, secured and unsecured creditors would be paid 100% of their allowed claim.

On December 26, 2001, the Debtors filed an amended Schedule F of unsecured creditors. (Doc. No. 40). The Debtors' amendment added certain post-petition debts owed for medical care to the Debtors' schedule of unsecured creditors. Following the amendment, said post-petition unsecured creditors received notice of the bankruptcy filing, stating that the case had been filed on September 8, 1999 and that the deadline for filing claims had expired on January 6, 2000. (Doc. No. 44).

In response to the notice, several newly added post-petition unsecured creditors filed proofs of claim in the Debtors' case. A total of eight claims were filed by or on behalf of Pediatric Radiology, Children's Hospital of Alabama, Norwood Clinic, and UAB Health Services Foundation. (Claim Nos. 25, 26, 27, 28, 29, 30, 31, and 32). All of the claims were for medical services provided to the Debtors' minor daughter.

On February 19, 2003, the Debtors, citing increased medical expenses, sought to modify their confirmed plan to reduce the amount of their payments to the Trustee, resulting in a reduction in the percentage provided to unsecured creditors from 100% to 0%. (Doc. No. 51). Without objection, the Debtors' modification was not disapproved by the Court. (Doc. No. 57). Thus, the plan as modified became the plan. *See* 11 U.S.C. § 1329(b)(2).

A second motion to modify was filed by the Debtors on June 20, 2002. (Doc. No. 64). With this modification the Debtors sought to add Claim # 32, a post-petition claim of Children's Hospital of Alabama in the amount of $47.79, to the Chapter 13 plan and provide, through increased payments, full payment of the claim. The remainder of the plan was not changed. Without objection, the Debtors' modification was not disapproved by the Court. (Doc. No. 71). Thus the plan as modified became the plan. *See* 11 U.S.C. § 1329(b)(2).

On September 9, 2003, the Debtors filed the motion to modify which is currently

before the Court. (Doc. No. 77). In the current modification, the Debtors again cite increased medical expenses as grounds, state that they are unable to modify the plan to pay post-petition claims for medical bills, and seek to reduce the percent paid to all post-petition unsecured claims to 0%. Unlike the prior modifications, the Chapter 13 Standing Trustee objected to the Debtors' motion to modify, and the motion was set for a hearing on October 8, 2003. (Doc. No. 80). At the hearing on October 8, 2003, the Court requested the Debtors and the Trustee provide the Court with authority on their positions and continued the matter to October 29, 2003. At the hearing on October 29, 2003, Debtors' counsel and the Chapter 13 Standing Trustee presented arguments on the issue and the matter was taken under advisement.

## CONCLUSIONS OF LAW

### A. Post–Petition Claims

The status of a postpetition claim under Chapter 13 is somewhat ambiguous. "Sometimes a debt that arises after the petition in a Chapter 13 case will qualify as a postpetition claim under § 1305; sometimes it will qualify as an administrative expense under § 503; sometimes it will qualify as neither; sometimes it will qualify as both." 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 7.38 (2d ed.1994).

### Administrative Expenses § 503

11 U.S.C. § 503 provides in pertinent part:

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses

. . .

(1)(A) the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for services rendered after the commencement of the case. . . .

■■■ The first requirement under this section, and a prerequisite for determining that something is an administrative expense, is that the party requesting payment file a request for payment. "An application for payment of an administrative expense should not be in a filing denominated as a 'proof of claim.' An application for payment of an administrative expense is not properly asserted in a proof of claim, and the filing of a proof of claim is unnecessary to request payment of an administrative expense; the application for payment filed under section 503(a) is all that is required." 4 COLLIER ON BANKRUPTCY ¶ 503.02[2][a] (Lawrence P. King et al. eds., 15th ed.1997) (citing *NL Industries v. GHR Energy Corp.,* 940 F.2d 957 (5th Cir.1991); *In re Parker, Jr.,* 15 B.R. 980 (Bankr.E.D.Tenn.1981)). In the present case, eight creditors filed post-petition unsecured claims and did not request payment as administrative expenses; nor did the Debtors request that the claims be paid as an administrative expense. Thus, there need be no determination of whether or not any of the claims are allowable administrative expenses under § 503(b), because no party has requested such treatment.

### Post Petition Claims Under § 1305

#### Types of Claims Contemplated by 11 U.S.C. § 1305

■■■ Post petition claims are addressed in 11 U.S.C. § 1305, which states:

(a) A proof of claim may be filed by an entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

(b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

(c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

This section only allows for the filing of two types of claims, claims for taxes and for consumer debt.[1] Consumer debt is defined under 11 U.S.C. § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The post-petition claims filed in the present case were incurred by the Debtors for the medical treatment of their minor daughter. Thus, the Debts are consumer debts under § 101(8), as they were incurred by the individual debtors for a family purpose.

■ However, not all post-petition claims for consumer debts are proper under 11 U.S.C. § 1305(a)(2). Post-petition claims for consumer debt are further limited to debts incurred "for property or services necessary for the debtor's performance under the plan." 11 U.S.C. § 1305(a)(2). Whether the property or services rendered were necessary for the debtor's performance under the plan is a factual question, which must be examined on a case by case basis. *See In re Bagby,* 218 B.R. 878 (Bankr.W.D.Tenn.1998) (holding that cash advances obtained to pay rent and utilities are debts necessary for the debtors' performance under the plan); *Keaton v. Boatmen's Bank of Tennessee (In re Keaton),* 212 B.R. 587, 589 (E.D.Tenn.1997) (determining attorney fees are not services necessary for debtors' performance under the plan); *In re Leavell,* 190 B.R. 536, 541 (Bankr.E.D.Va. 1995) (holding that a ring and a video cassette recorder are not property necessary for the debtor's performance under the plan). The legislative history provides some indication of the type of post-petition claims contemplated by Congress in drafting § 1305(a)(2). "[A]uto repairs in order that the debtor will be able to get to work, or medical bills" were cited by Congress as examples of proper § 1305(a)(2) post petition claims. H.R. Rep. No. 95–595, at 427 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6383; *see also In re Sims,* 288 B.R. 264, 266–67 (Bankr.M.D.Ala.2003); *In re Goodman,* 136 B.R. 167, 170 (Bankr. W.D.Tenn.1992); *In re Trentham,* 145 B.R. 564, 569 n. 7 (Bankr.E.D.Tenn.1992); *In re Pritchett,* 55 B.R. 557, 559 (Bankr. W.D.Va.1985) (holding post petition claims for medical expenses are proper under § 1305(a)(2)).

---

1. Although these categories may seem broad enough to encompass all post-petition debt of the Chapter 13 debtor, they are necessarily specific in nature. By limiting post-petition claims to taxes and consumer debt, the business debts of a Chapter 13 debtor are excluded from § 1329 and more properly relegated to 11 U.S.C. § 503.

The post-petition claims at issue are for medical expenses. However, the medical expenses incurred by the Debtors post petition were for the treatment of their minor daughter. This Court will not differentiate between services provided to the Debtors or to their minor children for the purposes of inclusion under § 1305. Any medical care provided to minor children of the Debtors can be seen as necessary for the Debtors to perform under the plan, as parents are required to provide for their minor children. Additionally, there is a direct correlation between the health of a child and a parent's ability to work and successfully fund a Chapter 13 plan. Under this analysis, the post-petition claims filed for medical expenses of the Debtors' minor child are claims for "consumer debt, that arises after the date of the order for relief under this chapter, and ... [are] for property or services necessary for the debtor's performance under the plan" as contemplated under 11 U.S.C. § 1305(a)(2). 11 U.S.C. § 1305(a)(2).

*Who Can File a Claim Under 11 U.S.C. § 1305*

■ A post-petition creditor of the debtor whose claim is of the type contemplated under § 1305(a)(2) is given a choice on whether or not to participate in the Chapter 13 plan. Section 1305(a) is purely voluntary, stating that the creditor "may" file a claim in the debtor's bankruptcy case. 11 U.S.C. § 1305(a); *see also In re Glover,* 107 B.R. 579, 584 (Bankr.S.D.Ohio 1989). A debtor may not file a proof of claim on behalf of a post-petition creditor. *In re Smith,* 192 B.R. 712, 714 (Bankr.E.D.Tenn. 1996); *In re Trentham,* 145 B.R. 564, 567 (Bankr.E.D.Tenn.1992); *In re Pritchett,* 55 B.R. 557, 559 (Bankr.W.D.Va.1985). Thus, the debtor may not force a post-petition creditor to participate in the Chapter 13

case. *See In re Sims,* 288 B.R. 264, 268 (Bankr.M.D.Ala.2003); *see also* 8 Collier on Bankruptcy ¶ 1305.02 (Lawrence P. King et al. eds., 15th ed.1997); 2 Keith M. Lundin, Chapter 13 Bankruptcy § 7.38 (2d ed.1994). In this case, several post-petition creditors filed proofs of claim in the Debtors' bankruptcy case, thereby electing to participate in the Debtors' Chapter 13 case.

*Allowance of Claims Filed Under 11 U.S.C. § 1305*

■ After it is determined that a post-petition claim is properly filed under § 1305(a)(2), the post-petition claim must go through a claims allowance process. Section 1305(c) contains the first constraint on allowance of § 1305(a)(2) post-petition claims. A § 1305(a)(2) claim will "be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained."[2] 11 U.S.C. § 1305(c). Where a creditor has "notice or actual knowledge of a prospective debtor's petition in bankruptcy[,] [the creditor] should be aware that the debtor is limited in his or her ability to incur debt." *In re Thornton,* 21 B.R. 462, 464 (Bankr. W.D.Va.1982). Awareness of this limitation should lead the creditor to inquire and determine the procedure required for a debtor in a pending bankruptcy case to incur debt. Thus, a creditor with knowledge of a debtor's pending bankruptcy case should know or discover that the debtor must obtain approval from the trustee prior to incurring debt. *In re Phillips,* 219 B.R. 1001, 1007 (Bankr.W.D.Tenn. 1998) (**stating that it is "inconceivable" the a bankruptcy attorney, as creditor of the debtor, would not know that prior**

---

**2.** Although it may seem obvious, it is important to note that the § 1305(c) restriction only applies to § 1305(a)(2) claims for post-petition consumer debt.

**approval was needed prior to incurring post petition legal fees).** Under such circumstances, extending credit without the trustee's approval will result in the claim of the postpetition creditor being disallowed.[3]

However, if obtaining approval of the trustee prior to incurring post-petition debt is impracticable, then the claim will be allowed without such approval. Obtaining prior approval for medical treatment is clearly impracticable. As previously discussed, medical bills are the type of post-petition claims which § 1305 was enacted to encompass, and "medical treatment is immediately necessary, and prior approval for incurring debt by accepting treatment is not practicable." *In re Thornton*, 21 B.R. 462, 464 (Bankr.W.D.Va.1982); *see also* H.R. REP. No. 95–595, at 427 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6383.

■ Pediatric Radiology, Children's Hospital of Alabama, Norwood Clinic, Inc., and UAB Health Services Foundation filed a total of eight post-petition claims in the Debtors pending Chapter 13 case. All of the post-petition claims filed in the Debtors' case were incurred for the medical treatment of their minor daughter. It would clearly be impracticable for the Debtors to seek trustee approval prior to obtaining medical treatment for their minor daughter. Thus, all eight of the post-petition claims filed in the Debtors' case are not disallowed under § 1305(c).

■ Even if a claim is not disallowed under § 1305(c), the claims allowances process is not complete. Section 1305(b) places an additional constraint on allowance of § 1305(a)(2) post-petition claims, stating:

> (b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 1305(b). Section 1305(b) requires a post-petition claim to go through the same claims allowance process as a pre-petition claim. A § 1305(a)(2) claim will be "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). If a party in interest objects, the court must determine the extent to which the post-petition claim is allowed under § 502(b) and (c) or disallow the claim under § 502(d) or (e). 11 U.S.C. § 1305(b); *see also* 11 U.S.C. § 502(b), (c), (d), and (e). However, § 1305(b) has the effect of deleting the language "as of the date of the filing of the petition" from § 502(b) and replacing it with the language "as of the

---

**3.** However, the disallowance of a post petition claim under § 1305(c) only prevents the claim from being paid under the plan, it does not discharge the debt. A post petition claim disallowed under § 1305(c) will not be discharged, because 11 U.S.C. § 1328(a) states that a debt is only discharged if it is "provided for by the plan or disallowed under section 502." 11 U.S.C. § 1328(a). Thus, disallowance for failure to obtain prior approval of the trustee under § 1305(c) would not discharge the debt. *But see Discharge of Claims filed Under 11 U.S.C. § 1305 infra* (discussing

**discharge of allowed post petition claims).** The post-petition creditor in such a situation is forced to await the discharge of the debtor or seek relief from the automatic stay to pursue collection of the debt. *See* 11 U.S.C. § 362; *RTO Rents v. Benson (In re Benson)*, 116 B.R. 606 (Bankr.S.D.Ohio 1990) **(stating that the "debtor ignored the court's order not to incur additional debt without the approval of the court or chapter 13 trustee" and holding that cause existed to grant the post-petition creditor relief from the stay).**

date such claim arises." 11 U.S.C. §§ 502(b) and 1305(b).

■ Of the eight post-petition claims filed in the Debtors' case, the Debtors objected to the proof of claim filed by Pediatric Radiology, to the extent it was for pre-petition services. (Doc. No. 48 & Claim No. 25). Pediatric Radiology was listed on the Debtors' original Schedule F, giving the creditor notice of the bankruptcy filing and the January 6, 2000 bar date for filing claims. Thus, the portion of the claim constituting charges for pre-petition services was filed subsequent to the bar date for pre-petition claims, and the Debtors' objection was sustained to the extent the claim was for pre-petition services. (Doc. No. 60). There was no objection to the portion of the claim of Pediatric Radiology constituting post-petition charges, and therefore, the post-petition claim of Pediatric Radiology is allowed. 11 U.S.C. §§ 1305(d) and 502(a). As there have been no objections to the remaining seven post-petition claims filed in the Debtors' Chapter 13 bankruptcy case, all seven claims are deemed allowed. 11 U.S.C. §§ 1305(d) and 502(a). However, the allowance of a post-petition claim does not mean that the claim will be discharged.

*Discharge of Claims filed Under 11 U.S.C. § 1305*

■ The scope of a debtor's Chapter 13 discharge is governed by 11 U.S.C. § 1328. Under § 1328(a), "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title." The language of § 1328(a) raises the question of how the phrase "provided for" is to be interpreted. Several courts have held "that the phrase 'provided for' in section 1328(a) simply requires that for a claim to become dischargeable the plan must 'make a provision for' it, *i.e.*, deal with it or refer to it." *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1122 (9th Cir.1983); *see also U.S. v. Hairopoulos (In re Hairopoulos)*, 118 F.3d 1240, 1243 (8th Cir.1997) ("**A debt is 'provided for' by a Chapter 13 plan where the plan acknowledges the debt even if the plan does not propose to make any payments on the claim.**") (citing *Gregory*, 705 F.2d at 1122); *In re Pritchett*, 55 B.R. 557, 559 (Bankr.W.D.Va.1985) (citing *Gregory*, 705 F.2d at 1122). Under 11 U.S.C. § 1322(b)(6), the Chapter 13 plan may "provide for the payment of all or any part of any claim allowed under section 1305 of this title." Accordingly, the discharge of post-petition debt is dependant on two factors: first, the post-petition claim must be allowed under § 1305, and second, the Chapter 13 plan must provide for the post-petition claim.[4]

■ In this case, the Debtors' original Chapter 13 plan provided for post-petition claims in class nine. (Doc. No. 1). However, the Debtors' Confirmed Chapter 13 plan does not deal with, refer to, or acknowledge post-petition debts. (Doc. No. 18). On December 26, 2001, the Debtors filed an amended Schedule F of unsecured creditors. (Doc. No. 40). The Debtors' amendment added certain post-petition debts owed for medical care to the Debtors' schedule of unsecured creditors. Al-

---

4. "The scope of a chapter 13 discharge in relation to allowed postpetition claims depends on whether the claim is held to be a *debt provided for by the plan* .... However, section 1322(b) dictates that a plan may provide for payment of a claim *allowed* under section 1305. And a claim may not be al- lowed unless a creditor voluntarily files it. Therefore, if a postpetition claim is filed, and if the plan provides for the claim, it is subject to the general provisions of the chapter 13 discharge." 8 COLLIER ON BANKRUPTCY ¶ 1305.03[1] (Lawrence P. King et al. eds., 15th ed.1997) (citations omitted).

though a debtor may freely amend his or her schedules at any time before the bankruptcy case is closed, a mere amendment to add post-petition creditors to schedules will not discharge the debt where the plan does not "provide for" the post-petition creditors.[5] Fed. R. Bankr.P. 1009; 11 U.S.C. § 1328(a). Thus the Debtors took the present action, seeking to amend the Chapter 13 plan to provide for the post petition claims, in order for the post-petition claims to be discharged. (Doc. No. 77); *see* 11 U.S.C. §§ 1322(b)(6), 1328(a) and 1329.

### B. Modification of a Confirmed Plan

A confirmed Chapter 13 plan has a res judicata effect and can only be modified by the Court in accordance with 11 U.S.C. § 1329. *See Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 829 (11th Cir.2003); *Systems & Services Technologies, Inc. v. Davis (In re Davis)*, 314 F.3d 567, 570 (11th Cir.2002). In the present case, the Debtors' plan has been confirmed; thus, the only authority for a modification at this stage in the Debtors' case would be 11 U.S.C. § 1329(a). Section 1329(a) provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, trustee, or the holder of an allowed unsecured claim to,—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

This section expressly grants standing to modify a confirmed Chapter 13 plan to the debtor, trustee, or an unsecured creditor. *See* 11 U.S.C. § 1329(a); *see also* David S. Kennedy & R. Spencer Clift, III, *Reasonable and Necessary Expenses Under Section 1325(B) of the Bankruptcy Code, Post Confirmation Considerations, and The Effect of Conversion and Dismissal of Chapter 13 Cases*, 32 U. MEM. L. REV. 789, 844–61 (2002). A confirmed Chapter 13 plan can only be modified in three "certain, set, and enumerated ways" listed in the statute. *In re Barclay*, 276 B.R. 276, 280 (Bankr.N.D.Ala.2001); *see also In re Trentham*, 145 B.R. 564, 567 (Bankr.E.D.Tenn.1992) *In re Goodman*, 136 B.R. 167, 168 (Bankr.W.D.Tenn.1992) 5 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 124:2, at 124–17 (2d 1994) (citing *In re Moore*, 247 B.R. 677 (Bankr.W.D.Mich.2000); *In re Baldwin*, 97 B.R. 965 (Bankr.N.D.Ind.1989)) (**"By negative implication, the specification of these permissible forms of postconfirmation modification exclude other possible proposed modifications."**) The three specific modifications allowed by statute are: (1) to alter the amount of payments; (2) to alter the length of the plan, provided that the plan as modified

---

**5.** In *In re Trentham*, 145 B.R. 564, 569 (Bankr.E.D.Tenn.1992) the court recognized that amendments to add post-petition creditors "give a postpetition consumer creditor the impression that it must file a proof of claim." Noting the voluntary participation contemplated by § 1305, the court forbid debtors from submitting any orders which would give post-petition creditors the impression that they are required to participate in the Chapter 13 plan. *Id.*

complies with the time constraints within subsection (c); and (3) to offset the distribution to a creditor by any other payment, in various forms, that the creditor has received. The plan, as modified, must still comport with the requirements for confirmation, such as being proposed in good faith and satisfying the best interest of creditors test, in order for the Court to approve the proposed modification. 11 U.S.C. § 1329(b); *see also* 11 U.S.C. §§ 1322(a) and (b), 1325(c), and 1323(c).

■ The language of the Debtors' current motion to modify states that the "Debtors' are not able to modify their plan to increase their payments to cover any post-petition medical bills; therefore, all unsecured post-petition claims will be paid approximately 0%." The language of the Debtors' motion indicates that the Debtors are attempting to alter the amount of payments to a particular class under 11 U.S.C. § 1329(a)(1).[6] Yet, a more through reading of § 1329(a)(1) reveals that the plan may only be modified to increase or reduce the payments to a class "provided for by the plan." Modification to provide for claims allowed under § 1305 does not fall into one of the three specific modifications

allowed under 11 U.S.C. § 1305 unless post-petition claims are previously provided for by the plan.[7] *See* 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.51 (2d ed.1994). As previously discussed, the Debtors' Confirmed Chapter 13 plan does not provide for post-petition debts.[8] (Doc. No. 18). Thus, it would appear, that in this case the Debtors' Motion to Modify is improper and due to be disapproved.

■ However, one factor exists that complicates the Court's ruling in this matter. The record reveals that on June 20, 2002, the Debtors filed a Motion to Modify to pay the claim of Children's Hospital of Alabama in full, through the Chapter 13 bankruptcy plan. (Doc. No. 64 & Claim No. 32). There were no objections to the motion, and on July 29, 2002, an Order Not Disapproving Modification was entered. (Doc. No. 71). Pursuant to 11 U.S.C. § 1329(b)(2) "[t]he plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." The Chapter 13 plan which the Debtors now seek to modify is the plan as confirmed by the order entered March 14, 2000 and as modified by subsequent mo-

---

**6.** The Debtors previously modified their plan to reduce the percentage provided to unsecured creditors from 100% to 0%. (Doc. No. 51). This modification clearly falls under § 1329(a)(1), which allows a modification to "reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a)(1).

**7.** "Nevertheless, some bankruptcy judges appear to permit post-confirmation modification of Chapter 13 plans to provide for treatment of post-petition claims under certain conditions." *In re Bagby*, 218 B.R. 878, 884 (Bankr.W.D.Tenn.1998) (citing *In re Trentham*, 145 B.R. 564 (Bankr.E.D.Tenn.1992); *In re Goodman*, 136 B.R. 167 (Bankr. W.D.Tenn.1992); *In re Thornton*, 21 B.R. 462 (Bankr.W.D.Va.1982)). "[T]he court will only allow the addition of ... postpetition consumer creditors if they are to be paid 100% unless

the creditor affirmatively consents to be paid less than 100%." *Trentham*, 145 B.R. at 569. "[T]he Court will only allow the addition of ... postpetition creditors if they are paid one hundred percent unless the creditor affirmatively consents to be paid less than one hundred percent." *Goodman*, 136 B.R. at 170–71.

**8.** Section 1322(b)(6) clearly permits a plan to provide for post-petition claims, and many courts suggest that all Chapter 13 plans should contain a provision for the payment of post-petition claims in order to avoid the problem in the case at bar. *In re Bagby*, 218 B.R. 878, 884 (Bankr.W.D.Tenn.1998) (citing 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.51 (2d ed.1994)); *In re Trentham*, 145 B.R. 564, 567 (Bankr.E.D.Tenn.1992) (citing 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 4.75 (1990)).

tions to modify, including the modification adding Claim # 32, the post-petition claim of Alabama Children's Hospital. As the prior modification specifically sought to add only the claim of Alabama Children's Hospital, it will not be interpreted to open the door to the addition of or be seen as a provision for all post-petition claims. Based on this prior modification, it would appear that Claim # 32 of Alabama Children's Hospital is provided for by the plan in a class by itself to be paid 100%.

The Court must now take a second look at the Debtors' Motion to Modify in light of the previous modifications. As previously noted, the Debtors have requested to modify the plan to reduce the percent paid to post-petition claims to 0%. Section 1329(a)(1) allows a debtor to modify the plan to reduce the amount paid to a class of claims provided for by the plan. Based on the prior modification, it would appear that the present motion to modify is a proper motion under 11 U.S.C. § 1329(a)(1) with respect to the class containing the post-petition claim of Alabama Children's Hospital.

■ As the Debtors' motion is properly brought under 11 U.S.C. § 1329(a)(1), the Court must now determine if the proposed modification is permitted. This Court previously established in *Duke* that "modification under § 1329 is allowed only after a movant establishes a postconfirmation material change of circumstances and only after the court finds the modification complies with the good faith requirement of § 1325(a)(3), which includes a judicial determination that the change of circumstances is beyond the control of the debtor and was not caused or contributed to by the debtor." *In re Duke*, 153 B.R. 913, 918 (Bankr.N.D.Ala.1993) (citing *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989)). Additionally, the Eleventh Circuit Court of Appeals, citing the legislative history behind § 1329, stated:

Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation.

. . .

[M]odification is permissible where problems such as a "natural disaster or long-term layoff, or family illness or accidents with attendant medical bills" prevent compliance with the original plan. Fueling the creation of flexible modification provisions was the simple recognition that "[t]he problems which caused financial distress to begin with, . . . do not magically disappear on the filing of a petition under chapter XIII."

*Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)*, 12 F.3d 1008, 1011 (11th Cir. 1994) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 124 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6085; S.Rep. No. 95–989, 95th Cong., 2d Sess. 12 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5798).

The Debtors cite increased medical expenses as grounds for their motion to modify. Such grounds appear to constitute a material change in circumstances sufficient to support a modification of the Debtors' Chapter 13 plan. Medical debt exemplifies the unforeseen circumstances Congress contemplated as permissible grounds for modification of the Chapter 13 plan. The Debtors' proposed modification complies with the requirements § 1329(b)(1), as § 1322(b)(6) permits a plan to "provide for the payment of all or any part of any claim allowed under section 1305 of this title." 11 U.S.C. §§ 1329(b)(1) and 1322(b)(6). Further, the Debtors' modification appears to be proposed in good faith as the Debtors did not contribute to or cause the incurrence of increased medical debt. *See* 11 U.S.C. §§ 1329(b)(1) and 1325(a).

## CONCLUSION

Based upon the foregoing, the Court finds that the Debtors' Motion to Modify is not disapproved to the extent that the motion seeks to modify the class of claims containing the post-petition claim of Alabama Children's Hospital. Although the previous modification to include the claim of a post-petition creditor was not proper under 11 U.S.C. § 1329, it was not objected to and not disapproved by this Court. Such modifications should not be allowed unless the confirmed plan provides for the treatment of post-petition claims. To the extent the Debtors are now attempting to modify the plan to include the additional postpetition claims and provide nothing to those claims the modification is not proper under 11 U.S.C. § 1329 and is disapproved.

A separate order will be entered in accordance with this Memorandum Opinion.